IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SYED AREEBUDDIN, et al.,       )
                               )
       Plaintiffs,             )
                               )
v.                             )   Civil Action No.: 1:09-cv-1083
                               )
ONEWEST BANK, F.S.B., et al,   )
                               )
       Defendants.             )

## Memorandum Opinion

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. no. 20) filed on behalf of Defendants OneWest Bank, F.S.B. ("OneWest") and Mortgage Electronic Registration Systems, Inc. ("MERS"), in addition to Defendant Equity Trustees, LLC's Motion for Judgment on the Pleadings (Dkt. no. 19). For the reasons that follow, Defendants' Motions are hereby GRANTED. This case is DISMISSED WITH PREJUDICE, as any further effort to amend would prove futile.

### I. Background

Plaintiffs filed their Amended Complaint on December 3, 2009, alleging claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.*, as well as claims for declaratory judgment and quiet title.

Plaintiffs allege that they refinanced their home (the "Property") on February 14, 2006. In doing so, Plaintiffs executed a promissory note (the "Note") and deed of trust (the "Deed") securing the Note.[1] The Deed provides for the sale and transfer of the Note

---

[1] Plaintiffs actually executed two promissory notes, but the first note is the only loan at issue in this case, as it is the instrument secured by the deed of trust under which the foreclosure sale was scheduled.

1

without any need to give prior notice to Plaintiffs.² *See* Deed of Trust at ¶ 20. Moreover, the Note states that "[i]n addition to the protections given to the Note holder under this Note, a ... Deed of Trust...dated the same date as this Note protect[s] the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note." Note at ¶ 11.

In the Note, IndyMac Bank, F.S.B. ("IndyMac") is named as the initial Lender and Mortgage Electronic Registration System, Inc. ("MERS") was named beneficiary. *See* Amend. Compl. at ¶ 13. As is now well known, IndyMac is defunct and its assets were seized and transferred to the FDIC as Receiver. The FDIC then sold some of those assets to OneWest in March 2009, including the mortgage at issue in the present case.³ The Note and Deed are signed by Plaintiffs, and indicate a blank endorsement which reads "PAY TO THE ORDER OF _____ WITHOUT RECOURSE INDYMAC F.S.B.," and is signed by "Vincent Dombrowski, Vice President." Note at p. 5.

At some point after refinancing their home, Plaintiffs admittedly "refused to pay" the loan. *See* Amend. Compl. at ¶ 49. In 2008, Plaintiffs were notified of their default, loan acceleration, and the date of foreclosure sale. *See* Amend. Compl. at ¶ 16. OneWest named Equity, LLC ("Equity") as substitute trustee in a "Deed of Appointment of Substitute Trustee," which stated that the "the holder of the Note shall have the power and authority to appoint. . . substitute trustee(s) in the place and stead of the trustee(s) named therein" which Plaintiffs believe is a misrepresentation. *See* Amend. Compl. at ¶¶ 26, 36.

---

² Plaintiffs explicitly reference and rely upon the notes and deed of trust at issue in this case, and do not dispute the authenticity of these documents. Thus, the Court may consider them at this stage in the case. *See American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).
³ As Defendants note, the sale agreement between OneWest and the FDIC is available publicly. *See* www.fdic.gov/about/freedom/IndyMacLoanSaleAgrmt.pdf.

To the best of the Court's knowledge, a foreclosure sale of the Property has yet to take place.[4]

## II. <u>Standard of Review</u>

Under FED. R. CIV. P. 12(b)(6) an adequate Complaint must contain "sufficient factual matter, accepted as true 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is "facially plausible" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion for judgment on the pleadings made pursuant to FED. R. CIV. P.12(c) is decided under the same standard as a Rule 12(b)(6) motion to dismiss. *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009). However, this case presents a procedural anomaly in that Equity, LLC, the party moving for judgment under Rule 12(c), has yet to file an answer. A motion may be made pursuant to Rule 12(c) only "after the pleadings are closed," rendering a motion under 12(c) premature at this stage of the action. However, given that a Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion, the Court will treat Equity's Motion as having been made pursuant to Rule 12(b)(6).

---

[4] One of Plaintiffs' repeated allegations relates to the Note's supposed securitization. After a hearing before the Court on Defendants' Motion to Dismiss Plaintiffs' initial Complaint, Plaintiffs' counsel requested information from OneWest's counsel regarding whether Plaintiffs' loan had been securitized. According to Defendants' counsel, she responded with this information, including a declaration and supporting documentation, confirming that the loan had *not* been securitized. *See* Defendants' Ex. C (containing MERS Milestone, Declaration of Charles Boyle, Loan Sale Agreement, and Loan Schedule). Nonetheless, Plaintiffs' counsel continues to pursue the theory that, "upon information and belief," the loan was securitized. *See* Amend. Compl. ¶¶ 15, 27-32, 40, 53, 55, 59-60, 67-70, 76-80. As will be discussed, however, this securitization issue is immaterial to the ultimate disposition of the instant motions and does not affect whether Plaintiffs continue to be bound by the terms of the Note and Deed.

## III. Procedural History

Plaintiffs filed their initial Complaint in state court on September 1, 2009. Defendants timely removed this action to this District on October 8, 2009. After Defendants filed a Rule 12(b)(6) motion to dismiss, Plaintiffs sought and were given leave to amend their Complaint on November 13, 2009. Plaintiffs subsequently filed their Amended Complaint on December 3, 2009. Defendants again move for dismissal under Rule 12(b)(6) for failure to state a claim.

## IV. Analysis

Plaintiffs allege four counts against the respective Defendants. At their core, Plaintiffs' allegations seek to challenge the authority of the various named Defendants to enforce the deed of trust securing the Note executed by Plaintiffs.[5]

Plaintiffs allege that the entities seeking to foreclose on their home are not entitled as a matter of law to do so. Specifically, Plaintiffs allege that "given the splitting, selling, trading, and insuring of the pieces of the Notes on the secondary market, the Deeds of Trust are split from the Notes and are unenforceable . . . ." Amend. Compl. at ¶ 70. However, nothing in Plaintiffs' conclusory allegations provides a plausible basis for relief after considering the settled law of negotiable instruments or the enforcement of a deed of trust securing such instruments after their negotiation.

---

[5] In the Amended Complaint and Brief in Opposition to Defendants' Motion to Dismiss, Plaintiffs' counsel repeatedly uses the term "standing" or "Article III standing" in alleging that the various Defendants are without authority to foreclose on the Plaintiffs' home or enforce the promissory notes at issue. Counsel completely conflates and misunderstands the concept of "Article III standing," which refers to a plaintiff's ability to maintain a suit in federal court pursuant to the "case or controversy" requirement found in Article III of the United States Constitution. *See Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130, 2136 (1992). The same can be said for counsel's insistent citation of FED. R. CIV. P. 17's "real party in interest" requirement which, again, pertains to the ability of a *plaintiff* to bring a suit in federal court. *See* 6A FED. PRAC. & PROC. CIV. § 1543 (2d ed.)("By its very nature, Rule 17(a) applies only to those who are asserting a claim and thus is of most importance with regard to plaintiffs" and parties asserting cross-claims and counterclaims).

4

Under Virginia law, the holder of an instrument or a nonholder in possession of the instrument with the same rights as the holder may enforce the instrument. Va. Code. Ann. §8.3A-301. Further, an individual may be "entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id.* An individual becomes the "holder" of an instrument through the process of negotiation, and if "an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder." *Id.* at §8.3A-201(b). On the other hand, if an instrument has a blank endorsement, it is considered "payable to bearer," and it may be negotiated by transfer of possession alone. *See* VA. Code §§ 8.3A-201(b) & & 8.3A-205. In this case, the face of the Note shows that the Note has a blank endorsement. *See* Note at 5. Accordingly, it may be negotiated by a simple change in possession and enforced by its current holder, OneWest.

Further, absent a contrary provision, notes are generally freely transferable, and the transferee retains the right to enforce the instrument. *See* Va. Code Ann. § 8.3A-203(b) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument..."); *see also Johnson v. Ferris*, 58 Va. Cir. 7, 2001 WL 1829719, at *4 (May 31, 2001 Va. Cir. Ct.)(noting that "in the absence of an express provision against assignment of a contract not involving personal skill, trust, or confidence, the contract is freely assignable" and citing *J. Maury Dove Co. v. New River Coal*, 150 Va. 796 (Va. 1928)). The explicit terms of the Note at issue here indicate that it is freely transferable. *See* Note, ¶ 1 ("I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder"). As the Virginia

5

Supreme Court noted long ago, the promise to pay a mortgage is a promise to pay a "negotiable note[] secured by [the mortgage] to the respective payees thereof, or to the person or persons to whom [it] might...be negotiated..." *Blanton v. Keneipp*, 155 Va. 668, 681 (Va.1931).

By their own allegations, Plaintiffs admit they "refused to pay" on the Note. Amend. Compl. at ¶ 49. In Virginia, the obligation to pay an instrument can only be "discharged as stated in [Title 8.3A] or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract." Va. Code § 8.3A-601. Plaintiffs offer no allegation that they reached an agreement with a noteholder or took any other action which would suffice to discharge the obligation under the Virginia statute. Thus, "to permit the parties to the bill to object to its payment, on any of the grounds stated, would greatly impair the negotiability of bills and notes; their most distinguishing, most useful, and most valued feature." *Whitworth v. Adams*, 1827 WL 1200 an *45 (Va. June 5, 1827).

Next, the so-called "split" of the deed of trust from the promissory note alleged by Plaintiffs does not render the deed unenforceable nor does it leave the promissory note unsecured. Under Virginia law, when a note is assigned, the deed of trust securing that debt necessarily runs with it. *See Williams v. Gifford*, 139 Va. 779, 784 (1924); *see also Stimpson v. Bishop*, 82 Va. 190, 200-01 (1886)("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). Moreover, as the Virginia Supreme Court has recognized, when deeds of trust and their underlying notes are 'separate and distinct' documents,

> ... in appropriate circumstances, we have recognized that 'notes and contemporaneous written agreements executed as part of the same

6

> transaction will be construed together as forming one contract.' So long as neither document varies or contradicts the terms of the other, terms of one document which clearly contemplate the application of terms in the other may be viewed together as representing the complete agreement of the parties.

*Virginia Housing Development Authority v. Fox Run Ltd. Partnership*, 255 Va. 356, 364-365 (Va. 1998). Thus, the deed of trust continues to secure the holder of a note and nothing in the negotiation or putative securitization of a note renders it unsecured.

In turn, pursuant to Va. Code § 55-59(9), "[t]he party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby" are empowered to appoint a substitute trustee, "regardless of whether such right and power is expressly granted in such deed of trust." *Id.* Central to Plaintiffs' argument is that OneWest is not the "party secured by the deed of trust" or "the holder of greater than fifty percent of the monetary obligations secured thereby," and thus OneWest was not empowered to name Equity as a substitute trustee. However, as discussed above, the faces of the documents referenced in the Amended Complaint plainly indicate that the Note is endorsed in blank and is possessed by OneWest, which is thus the "party secured by the deed of trust." Once appointed, the substitute trustee is empowered by Va. Code § 55-59(7) to foreclose and sell property provided as security for the notes.

Finally, Plaintiffs also advance the argument in their Brief in Opposition that because "credit default swaps" had been purchased on Plaintiffs' loan, Plaintiffs are thereby discharged from their obligations under the promissory note due to some sort of impermissible "double recovery." Though there are significant procedural defects in raising this argument for the first time in a brief, the Court dispenses with it here for sake of judicial economy. As this District recently held in a nearly identical case, and this

7

Court agrees, "[Plaintiff] provides no factual or legal basis, and the Court finds none, to support his contention that because [Plaintiff's] default triggered insurance for any losses caused by that default or 'credit enhancements,' he is discharged from the promissory notes and the Property is released from the deeds of trust." *Horvath v. Bank of New York*, 2010 WL 538039 at *2 (E.D.Va. January 29, 2010).[6]

### a. Counts I and II – Declaratory Judgment

Counts I and II of the Amended Complaint seek a declaratory judgment from the Court declaring that none of the Defendants have any proper legal or equitable interest in the Property, and as such, ask that "[a]ny foreclosure proceedings currently underway be permanently stopped." Amend. Compl. ¶ 57. As Defendants note, this theory certainly seems inconsistent with Virginia's status as a non-judicial foreclosure state, and also undermines a secured party's authority under Virginia law to foreclose and sell property that is provided as security for a loan. *See* Va. Code §§ 55-59.1-59.4.

Given the Court's foregoing discussion of the transferability of promissory notes and the deeds that secure them, the Court simply has no basis to award the declaratory relief sought by Plaintiffs in this action.

---

[6] Plaintiffs' repeated citation to *Nizan v. Wells Fargo Bank Minnesota Nat. Ass'n*, 274 Va. 481 (Va. 2007) is unavailing. In that case, the Virginia Supreme Court identified that the doctrine of "double recovery" is a *defense* based in equity "that a party with two valid causes of action is entitled to 'seek compensation in each, [but is], nonetheless, estopped from collecting the full amount [of damages] in the second action if they were partially paid therefor in the first.'" *Id.* at 491 (citations omitted). Plaintiffs cite no case indicating this defense can be converted somehow as a basis on which to bring a claim before this Court. Even if that were possible, Plaintiffs' allegations on this issue are completely naked and "devoid of further factual enhancement," *Iqbal*, 129 S. Ct. at 1949 (citations omitted), and provide no plausible basis on which this Court can relieve Plaintiffs from their obligations on the notes and allow them to keep their home free and clear. Interestingly, in *Nizan*, the defendant bank served as trustee of a REMIC trust which acquired the note on the loan at issue in that case. Conspicuously absent in *Nizan* is any reference to the note's unenforceability because it is held in such a trust.

### b. Count III – Quiet Title

In Count III, Plaintiffs assert a claim to quiet title to the property in dispute. Plaintiffs simply assert the legal conclusion that Plaintiffs are "the only party to this matter that can prove a legal and equitable ownership interest in the Property." Amend. Compl. at ¶ 65. "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Maine v. Adams*, 277 Va. 230, 238 (2009). This claim resembles Counts I and II, and essentially seeks a declaration that none of the Defendants hold any claim to or interest in the property, but does so in a wholly conclusory fashion, without any factual pleadings in support.

Again, given the Court's foregoing discussion of the transferability of promissory notes and the deeds that secure them, the Court has no basis to award the relief sought by Plaintiffs in Count III of their Amended Complaint.

### c. Fair Debt Collection Practices Act ("FDPCA")

Finally, Count IV of the Amended Complaint alleges violations of the FDCPA against Defendant OneWest. In order to establish a FDCPA violation, Plaintiffs must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005). The FDCPA defines a debt collector as "any person who uses an instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts*, or who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6)(emphasis added).

This District recently emphasized that "[m]ortgage servicing companies and trustees exercising their fiduciary duties enjoy broad statutory exemptions from liability under the FDCPA." *Horvath*, 2010 WL 538039 at *3 (E.D. Va. Jan. 29, 2010)(citing 15 U.S.C. §1692a(6)(F)(i) ("The term [debt collector] does not include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement") and 5 U.S.C. §1692a(6)(F)(iii) ("The term [debt collector] does not include... any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person.")).

The Amended Complaint does allege, albeit generically, that OneWest acted without "authority to enforce the obligation...or in the alternative, the obligation has been extinguished, satisfied...or was acquired by said entity after an alleged declaration of default without consideration." Amend. Compl. at ¶76-77. However, these are precisely the type of "threadbare" and unsupportable assertions *Twombly* and *Iqbal* are meant to root out.

Further, as this District has also previously recognized, "[i]t is well-settled that provisions of the FDCPA generally apply only to debt collectors...[a]nd, creditors are not liable under the FDCPA." *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 717 (E.D.Va. 2003). More specifically, "creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the

10

FDCPA" *Id.; see also Warren v. Countrywide Home Loans, Inc.*, 2009 U.S. App. LEXIS 18191 (11th Cir. Aug. 14, 2009) ("several courts have held that an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property falls outside the ambit of the FDCPA...").

Though the Amended Complaint alleges that OneWest received the Note from the FDIC, the Plaintiffs do not, and cannot, plausibly allege that this was a transfer principally for the purpose of "collecting a debt." Rather, the Amended Complaint, taken in conjunction with documents it relies upon, reveals that Plaintiffs can only plausibly allege that OneWest is simply a mortgagor or mortgage servicer of the mortgage on Plaintiffs' home, which is not violative of the FDCPA.[7]

More importantly, even if the FDCPA did apply, Plaintiffs' FDCPA claim, like Plaintiffs' other claims, is based on the specious premise that OneWest somehow has no right, title, or interest in the Deed or the Note, despite the plain face of those documents. *See* Pl. Opposition at p. 15. As the foregoing makes clear, Plaintiffs offer no plausible basis on which the Court can agree with this premise.

---

[7] Plaintiffs apparently look to the fact that the Deed of Appointment of Substitute Trustee includes a handwritten note indicating that that it was signed by OneWest "pursuant to an authorized mortgage servicing agreement," but this does not support the allegation that the servicing rights for Plaintiffs' Note have been assigned to another party or that the Note is held pursuant to a "Pooling Agreement," nor is this allegation material in light of the foregoing.

11

## V. Conclusion

Plaintiffs' Amended Complaint fails to state a plausible basis on which relief may be granted. As such, all counts must be dismissed as to Defendants OneWest Bank, F.S.B., Mortgage Electronic Registration Systems, Inc., and Equity Trustees, LLC. As any further effort to amend would prove futile, this case is DISMISSED WITH PREJUDICE.

An appropriate order shall issue.

Alexandria, Virginia
March 24, 2010

/s/
Liam O'Grady
United States District Judge